IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUANE LINDER,<br><br>Plaintiff,<br><br>v.<br><br>JALAL SOLTENIAN, et al.,<br><br>Defendants. | No. 2:18-CV-2281-JAM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court are: (1) motion to dismiss by defendants Galang and Pucelik (ECF No. 19); and (2) unopposed motion for summary judgment by Smith and Soltenian (ECF No. 24).

## I. BACKGROUND

### A. <u>Plaintiff's Allegations</u>

This action proceeds on plaintiff's first amended complaint. See ECF No. 9. Plaintiff names the following doctors as defendants: (1) Jalal Soltenian, M.D.; (2) J. Chau, M.D.; (3) Christopher Smith, M.D.; (4) James Pucelik, M.D.; and (5) Carmelino Galang, M.D. Drs. Soltenian, Chau, and Smith are prison physicians. Drs. Pucelik and Galang are physicians at San Joaquin General Hospital. According to plaintiff, by 2009 he became dependent on a cane and

1

knee braces due to degenerative changes caused by arthritis. See ECF No. 9, p. 6. Plaintiff states he had been issued a "reasonable accommodation chrono" for a lower bunk and lower tier cell assignment because of his mobility problems. Id.

Plaintiff claims defendant Soltenian cancelled his lower tier accommodation chrono in 2014, despite the fact that plaintiff informed the doctor that doing so would "place my life, health well-being in jeopardy as to being injured and or causing an untimely death." Id. Plaintiff further alleges: "Dr. Soltenian said he did not care and he with a clear concious [sic] and deliberate intent with no regard for my well-being took away all my reasonable accommodations except for my lower bunk. . . ." Id. Plaintiff states he was required to move to an upper tier cell and, after several months going up and down stairs, he hyperextended his left knee to the point he could no longer walk. See id. Plaintiff alleges he was taken to the clinic after this injury but "was denied treatment and sent away," though plaintiff does not allege by whom. Id. Plaintiff was eventually seen at the medical clinic after he fell again two weeks later and was informed by Dr. Rudest (who is not a named defendant) that plaintiff would require a total knee replacement. See id. at 7. Plaintiff states he received a total knee replacement on March 30, 2015.

According to plaintiff, approximately two weeks following his surgery, his knee "started popping and making a grinding sound really bad," causing his knee to become dislocated. Id. Plaintiff was seen at the prison medical clinic by defendant Chau, who submitted a request for plaintiff to be seen by the surgeon. Id.

Next, plaintiff claims he was seen by an outside specialist, defendant Galang, on October 20, 2015. See id. According to plaintiff, defendant Galang "did not want to hear it and tried to tell me that there is nothing wrong." Id. Plaintiff was returned to the prison where he submitted "numerous 7362 Medical Requests" and was seen again by defendant Chau who prescribed pain medication "until I could see Dr. Galang once again." Id. at 7-8. Plaintiff alleges that, when he was sent to see defendant Galang again, he was informed "Dr. Galang had fled the County to avoid Medical malpractice Suites [sic]." Id. at 8.

/ / /

/ / /

2

Plaintiff states he thereafter returned to see an outside specialist a month later. He was told by Dr. Casey (who is not a named defendant) the problem with his knee replacement could have been resolved. See ECF No. 9, pg. 8. Plaintiff alleges, "out of the blue" defendant Smith approved plaintiff to see another outside specialist, defendant Pucelik, who told plaintiff "there is nothing more anyone can do. . . ." Id. According to plaintiff, defendant Pucelik informed him "he [presumably Dr. Pucelik] was told specifically by Dr. Smith that I have to deal with it, live with it, and there will be no further specialist care, per orders of Dr. Smith." Id.

### B. Procedural History

On November 6, 2018, the court determined the action was appropriate for service on defendants Galang, Pucelik, Smith, and Soltenian. See ECF No. 10. On November 14, 2018, the court issued findings and recommendations that defendant Chau be dismissed. See ECF No. 11. On February 13, 2019, waivers of service were returned on behalf of defendants Smith and Soltenian. See ECF No. 15. Defendants Smith and Soltenian filed their answer on March 1, 2019. See ECF No. 17. On March 12, 2019, waiver of service was returned on behalf of defendants Galang and Pucelik. See ECF No. 18. Defendants Galang and Smith filed their motion to dismiss on March 14, 2019. See ECF No. 19. On March 27, 2019, the District Judge assigned to this case adopted the court's November 14, 2018, findings and recommendations and defendant Chau was dismissed. See ECF No. 20. Defendants Smith and Soltenian filed their unopposed motion for summary judgment on May 2, 2019. See ECF No. 24.

## II. DISCUSSION

### A. Motion to Dismiss (Defendants Galang and Pucelik)

In their motion to dismiss, defendants Galang and Pucelik argue: (1) plaintiff's action is time-barred; and (2) plaintiff fails to state a claim against them under the Eighth Amendment for deliberate indifference to his serious medial needs. Defendants also contend that, to the extent plaintiff is permitted leave to amend, he should be required to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

///

1.   Standard for Motion to Dismiss

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

///

///

4

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

2. Analysis

i. Statute of Limitations

For claims brought under 42 U.S.C. § 1983, the applicable statute of limitations is California's statute of limitations for personal injury actions. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) ("[f]or actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions."); Jackson v. Barnes, 749 F.3d 755, 761 (9th Cir. 2014); Wilson v. Garcia, 471 U.S. 261, 280 (1985); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988). In California, there is a two-year statute of limitations in § 1983 cases. See Cal. Civ. Proc. Code § 335.1; Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004).

State tolling statutes also apply to § 1983 actions. See Hardin v. Straub, 490 U.S. 536, 543-44 (1998). California Civil Procedure Code § 352.1(a) provides tolling of the statute of limitations for a period not to exceed two years when the plaintiff is, at the time the cause of action accrued, an inmate serving less than a life sentence. See Cal. Code. Civ. P. 352.1(a). This tolling provision applies to all inmates except those sentenced to life without the possibility of parole. See Brooks v. Mercy Hospital, 204 Cal. Rptr.3d 289, 291-92 (Cal. App. 2016) (holding §

5

352.1(a) is applicable to prisoners serving a sentence of life with the possibility of parole, but the statutory language excludes those sentenced to life without the possibility of parole). Thus, for an inmate serving a sentence of life with the possibility of parole, a four-year limitation period applies.

Notwithstanding the application of the forum's state law regarding the statute of limitations, including statutory and equitable tolling, in the context of a § 1983 action, it is "federal law" which "governs when a claim accrues." Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999) (citing Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir.1994)). "A claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." Id. (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)); see also TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

According to defendants Galang and Pucelik, plaintiff's claims against them accrued at various times in 2015. Defendants also contend a two-year limitation period applies and that plaintiff's action is time-barred because it was filed on September 14, 2018, more than two years after even the end of 2015.[1]

Defendants' argument is not persuasive. Defendants conclude this action is governed by a two-year limitation period instead of a four-year limitation period because "Plaintiff is understood to be serving a 'life sentence'. . . ." Under a four-year limitation period, which would apply if plaintiff is serving any sentence other than a sentence of life without the possibility of parole, plaintiff's action would be timely. Defendants provide no support for their underlying factual premise that a two-year limitation period applies because plaintiff is serving a life sentence, let alone life without the possibility of parole. The current record contains no indication of plaintiff's sentence. For this reason, the court finds defendants Galang and Pucelik have not met their burden of establishing plaintiff's action is time-barred under a two-year limitation period.[2]

---

[1] This action was filed on August 22, 2018, not September 14, 2018, as defendants Galang and Pucelik contend. See ECF No.1. Plaintiff's first amended complaint was filed on September 14, 2018. See ECF No. 9. As discussed herein, defendants' error has no effect on the court's analysis.

[2] This finding does not preclude defendants Galang and Pucelik from renewing their

6

ii.     Failure to State a Claim

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

///

---

arguments related to the statute of limitations in the context of a motion for summary judgment.

7

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants Galang and Pucelik argue that, even if plaintiff's medical needs were sufficiently serious, the facts alleged in the first amended complaint show they appropriately treated plaintiff and, therefore, could not have been deliberately indifferent.[3]

In their brief, defendants concede plaintiff alleges the following facts as to defendant Galang, which the court must accept as true: (a) in October 2015, plaintiff complained to defendant Galang, who was the surgeon who performed a knee replacement on plaintiff in March of that year, that he was experiencing discoloration, popping, and grinding in his knee; (b) defendant Galang was not responsive to his complaints or belief that defendant had performed a faulty surgery; and (c) defendant Galang "did not want to hear it" and "refused to listen." The court finds plaintiff's allegations that defendant Galang refused to listen to plaintiff and that defendant Galang did not want to hear about plaintiff's complaints are sufficient to give rise to a

---

[3] Defendants do not argue plaintiff's medical condition was insufficiently serious to give rise to an Eighth Amendment claim.

8

reasonable inference of deliberate indifference. In reaching this conclusion, the court has, as it must, resolved any ambiguities in plaintiff's favor.

While the court agrees with defendants that plaintiff's allegations reflect that he in fact received medical treatment from Dr. Galang, specifically a knee replacement surgery and follow-up care, that is not to say that, at some point during his treatment, Dr. Galang did not become indifferent to plaintiff's complaints of pain, perhaps deliberately so. Plaintiff's allegations, discussed above, suggest that is what happened. It is reasonable to infer that, when confronted with plaintiff's continued complaints of pain and plaintiff's belief that defendant Galang may have committed malpractice in performing the knee replacement, defendant Galang decided to simply ignore plaintiff.

As to defendant Pucelik, plaintiff alleges that in November 2015 he was sent to see defendant Pucelik, an outside specialist, regarding his knee problems. However, defendant Pucelik "told me there is nothing more any one can do for me." ECF No. 9 pg. 8. As indicated above, plaintiff cannot state a claim to the extent he merely disagrees with defendant Pucelik's assessment that nothing more could be done to address plaintiff's knee problems. If, however, defendant Pucelik's assessment was not based on any examination or review of medical findings, a trier or fact could conclude that defendant Pucelik essentially ignored plaintiff's complaints and refused to provide any further treatment, as plaintiff alleges is the case with defendant Galang.[4] Resolving this factual ambiguity in plaintiff's favor, the court must conclude the current allegations are sufficient to place defendant Pucelik on notice of the factual basis of plaintiff's claim.

/ / /

/ / /

/ / /

/ / /

---

[4] Plaintiff attaches at Exhibit D to the first amended complaint a report prepared by defendant Pucelik following his examination of plaintiff on March 11, 2015. See ECF No. 9, pg. 57. While this document indicates that defendant Pucelik in fact examined plaintiff on this occasion, it does not speak to whether defendant Pucelik performed an examination in November 2015. Plaintiff does not attach any records relating to November 2015.

9

###### iii. More Definite Statement under Rule 12(e)

Defendants request plaintiff be ordered to provide a more definite statement pursuant to Rule 12(e) in the event the court permits plaintiff to file a second amended complaint. As discussed above, the court finds the allegations set forth in the first amended complaint sufficient to state cognizable claims against defendants Galang and Pucelik. A more definite statement is, therefore, not necessary.

### B. Motion for Summary Judgment (Defendants Smith and Soltenian)

In their motion for summary judgment, defendants Smith and Soltenian argue plaintiff failed to exhaust available administrative remedies as to plaintiff's claims against them. This motion is unopposed.

#### 1. Standard for Summary Judgment

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

///

///

2.      Defendants' Evidence

Defendants Smith and Soltenian support their motion for summary judgment with their statement of undisputed facts and declarations and exhibits attached thereto. See ECF No. 24-3. According to defendants, the following facts are not in dispute:

    a.  Plaintiff filed this action on August 22, 2018. (plaintiff's complaint, ECF No. 1).

    b.  Appeals concerning inmate health care issues are processed by the California Correctional Health Care Services (CCHCS). (Gates declaration, ¶ 3).

    c.  All levels of health care appeals/grievances are tracked through a computer database known as the Health Care Appeals and Risk Tracking System (HCARTS). (Gates declaration, ¶ 4).

    d.  Between January 1, 2014, and August 22, 2018, plaintiff submitted one appeal that was accepted and received a final health care appeals/grievance level review. (Gates declaration, ¶¶ 5, 8-9, and Exhibit A).

    e.  This grievance, log no. MCSP HC 16048906, did not complain about either defendant Smith or defendant Soltenian. (Gates declaration, ¶¶ 5, 8-9, and Exhibit A).

See ECF No. 24-3, pgs. 1-3.

Defendants' statement is accompanied by the declaration of S. Gates, the Chief of the Health Care Correspondence and Appeals Branch with CCHCS. See ECF No. 24-3, pgs. 5-8. Exhibit A consists of documents related to grievance log no. MCSP HC 16048906. See id. at 10-27.

3.      Analysis

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint

12

because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in first instance. See Albino v. Baca, 697 F.3d 1023 (9th Cir. 2012). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted. See id.

The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The inmate must submit their appeal on the proper form, and is required to identify the staff member(s) involved as well as describing their involvement in the issue. See Cal. Code Regs. tit. 15, § 3084.2(a). These regulations require the prisoner to proceed through three levels of appeal. See Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.2, 3084.7. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's

1 | departmental administrative remedy.  <u>See</u> <u>id.</u>  Departmental appeals coordinators may reject a
2 | prisoner's administrative appeal for a number of reasons, including untimeliness, filing excessive
3 | appeals, use of improper language, failure to attach supporting documents, and failure to follow
4 | proper procedures.  <u>See</u> Cal. Code Regs. tit. 15, §§ 3084.6(b).  If an appeal is rejected, the inmate
5 | is to be provided clear instructions how to cure the defects therein.  <u>See</u> Cal. Code Regs. tit. 15,
6 | §§ 3084.5(b), 3084.6(a).

Here, defendants observe plaintiff's allegations against them concern events in 2014 and that the complaint was filed on August 22, 2018.  Defendants reason: "To have exhausted the administrative process before bringing this action, Plaintiff needed to submit an administrative grievance concerning his claims against Defendants [Smith and Soltenian] after January 1, 2014, and pursue that grievance(s) through the final level of review before August 22, 2018."  According to defendants:

> Plaintiff only filed one health care grievance that received a final level decision between January 1, 2014, and August 22, 2018, log number MCSP HC 16048906 (DUF Nos. 5-6).  This grievance did not name either Defendant Dr. Smith or Defendant Dr. Soltenian-Zadeh.  (*Id.*; *see also*, Attachment 1, Declaration of S. Gates (Gates Decl.), Exhibit A at p. 3-8; Bates no. DEF-008-013).  The Departmental regulations require Plaintiff to "list all staff member(s) involved and. . .describe their involvement in the issue."  Cal. Code Regs. Tit. 15, § 3084.2(a)(3).  Plaintiff did not do so here as to Defendants Smith and Soltenian-Zadeh.

Defendants' evidence, which is not opposed and, therefore by definition, undisputed, establishes plaintiff's failure to exhaust.  As shown by Gates' declaration and Exhibit A, plaintiff's one and only grievance accepted through the required levels of review during the relevant time period failed to mention either defendant Smith or defendant Soltenian.  This grievance was insufficient to satisfy the administrative exhaustion requirement as to defendants Smith and Soltenian because it failed to provide an opportunity for the institution to address plaintiff's claims against them.

///
///
///
///

# III. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. The motion to dismiss filed by defendants Galang and Pucelik (ECF No. 19) be denied; along with their request for a more definite statement in the pleadings.

2. The unopposed motion for summary judgment filed by defendants Smith and Soltenian (ECF No. 24) be granted; and

3. Defendants Smith and Soltenian be dismissed; and

4. Defendants Galang and Pucelik be required to file an answer to plaintiff's first amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 1, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE